IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jason Alexander Young, | C/A No.: 0:11-1125-JFA-PJG |
| Plaintiff, | |
| v. | ORDER |
| Dr. Michael White, Aiken County Detention Center; Cathy Brown, Aiken County Detention Center, | |
| Defendants. | |

Plaintiff Jason Alexander Young, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights and pursuant to Title II of the Americans with Disabilities Act (ADA). The primary matter before this Court is defendant Cathy Brown's motion for summary judgment. The Magistrate Judge assigned to this action[1] has prepared a Report and Recommendation wherein she states that defendant Brown is entitled to summary judgment.[2] The plaintiff was advised of his right to file objections to the Report and Recommendation. The plaintiff filed timely objections to the Report, and thus this matter is ripe for review.

Generally, the plaintiff is an inmate of the South Carolina Department of Corrections who suffers from HIV/AIDS. He was housed as a pretrial detainee at the Aiken County Detention

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

[2] An order was issued pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying plaintiff of the summary dismissal procedure and possible consequences if he failed to adequately respond to the motion for summary judgment. Plaintiff responded to the motion.

1

Center (ACDC) when the alleged violations occurred. The plaintiff alleges that while he was a pretrial detainee at ACDC he was placed in segregation within the medical dormitory and given a status of "house alone/recreation alone" (HA/RA). Plaintiff made numerous requests to be reclassified, but prison medical staff denied him reclassification. According to defendant Brown, this was done because of mental health issues identified by prison staff and because he possessed a reduced immune system. In particular, ACDC medical personnel determined that placing the plaintiff in the general population would potentially expose him to physical harm and to illnesses of other inmates.

In his constitutional claim asserted under § 1983, the plaintiff's complaint appears to allege that defendant Brown violated his constitutional rights by preventing him from rejoining the general population. Further, plaintiff contends that his segregation constitutes a form of medical treatment which is unnecessary for his condition and which he may refuse. In his claim under the ADA, plaintiff appears to allege discrimination based on his HIV/AIDS status. He seeks monetary and injunctive relief.

*Plaintiff's Constitutional Claim*

As noted above, plaintiff appears to allege that defendant Brown violated his constitutional rights by segregating him from the general population at ACDC. The Magistrate Judge recommended that Brown be granted summary judgment on this claim. In this regard, she explained that the practice of segregating inmates suffering from HIV/AIDS is within the wide deference afforded prison administrators, and it is reasonably related to legitimate penological interests. *Bowman v. Beasley*, 8 F. App'x 175, 178–79 (4th Cir. 2001) (citing *Sandin v. Connor*, 515 U.S. 472, 482–83 (1995); *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Further, "if a particular condition or restriction is reasonably related to a legitimate governmental objective, it does not,

without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 557 (1979). Therefore, the Court agrees with the Magistrate Judge that plaintiff has not shown that his segregation violated his constitutional rights and fully incorporates the Magistrate Judge's discussion of this claim into this order.

In his objections to the Report, plaintiff does not argue that prisons do not have a legitimate penological interest in segregating inmates who suffer from HIV/AIDS. Instead, plaintiff contends that *his* segregation does not rest on any legitimate penological interest because plaintiff did not receive mental or immune system evaluations *prior to* his classification as HA/RA and because another HIV positive inmate was allowed in the general population. He further objects to defendant Brown's qualifications to evaluate and conclusions regarding his mental state and immune system.

These objections are without merit. Importantly, it appears that the cause of plaintiff's initial HA/RA classification was that the judge before whom plaintiff appeared in connection with plaintiff's underlying arrest ordered that plaintiff be given a mental evaluation before bond could be set. (ECF Nos. 13-1, at pp. 21–22; 29-4, at p. 1). Moreover, plaintiff received the required mental evaluation almost immediately upon his being removed from the general population; it occurred on January 20, 2011, the day after he was segregated. (ECF No. 13-1, pp. 21–23). At this evaluation, plaintiff's "rambling," "grandiose" stories and inconsistent statements caused the evaluating nurse to conclude that plaintiff was "[p]robably delusional" and that his behavior was "strongly suggestive of serious mental issues." (*Id*. at p. 21). Further, it appears that medical staff reviewed the necessity for plaintiff's segregation at least every 30 days thereafter. (*See* ECF Nos. 29-2, 29-3, & 29-4). Thus, although he was initially segregated to

obtain a mental evaluation before the judge in his case set bond, plaintiff remained segregated, at least in part, because ACDC staff had serious questions regarding his mental health.

Likewise, prison medical staff made a determination regarding plaintiff's immune system the same day his mental health evaluation occurred. For example, the nurse performing the mental evaluation knew plaintiff from plaintiff's previous incarceration and knew that plaintiff "was diagnosed with HIV approximately one year [before] and was segregated for his own protection and health." (ECF No. 29-2, at p. 1). Further, prison medical staff received plaintiff's medical records on the same day as plaintiff's mental evaluation. (*See* ECF No. 13-1, at pp. 24-29). Notably, the evaluating nurse contacted a nurse at an HIV clinic where plaintiff previously received treatment, and the HIV clinic nurse informed the evaluating nurse that although plaintiff "is experiencing 'advanced stage HIV,'" he was non-compliant with his prescribed medications. (*Id.* at p. 22). Hence, prison medical officials could have reasonably concluded that plaintiff suffered from a weakened immune system.

It is thus clear that the ACDC medical staff had a legitimate penological interest in segregating plaintiff. As the Magistrate judge observed, there is no evidence that the other HIV positive inmate was experiencing symptoms or effects similar to those of plaintiff, including those described above. (*See* ECF No. 63-1). Also, that plaintiff disagrees with defendant Brown's conclusions regarding plaintiff's mental health and immune system vitality does not demonstrate that plaintiff's constitutional rights were violated. Consequently, taken in the light most favorable to the plaintiff, these objections do not elevate plaintiff's segregation to the level of unconstitutional punishment.

Furthermore, as noted above, plaintiff argues that the segregation constituted a form of medical treatment, which he has a right to refuse. As the Magistrate Judge explained, even

4

assuming segregation is a form of medical treatment, plaintiff still cannot demonstrate that defendant Brown violated his constitutional rights. For example, it is clear that prison officials need not honor a prisoner's right to refuse medical treatment if legitimate penological interests, such as "treatment of an infectious disease, avoidance of contaminations, or prevention of disruption by illness-induced behaviors," require that the prisoner be treated. *Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006). Several such penological interests were present in this case: plaintiff had a weakened immune system and poor mental judgment, and these conditions were detrimental to his health and potentially the health of others. Consequently, this Court agrees with the Magistrate Judge's conclusion and finds that defendant Brown is entitled to summary judgment on this claim.

*Plaintiff's ADA Claim*

Plaintiff argues that defendant Brown discriminated against him based on his HIV/AIDS status by restricting him to segregation in violation of Title II of the ADA. *See* 42 U.S.C. § 12132. The Magistrate Judge has reviewed the claim under Title II's provisions and concluded that the plaintiff cannot prevail on this claim because he cannot demonstrate that he was denied a benefit solely because he was HIV-positive or diagnosed with AIDS. The undersigned agrees with the Magistrate Judge's conclusion regarding this claim but addresses the applicable law separately below.

First, the Magistrate Judge correctly noted that Title II of the ADA applies to prisons. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). Next, a plaintiff seeking recovery for violation of Title II of the ADA must show that "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or

otherwise discriminated against, on the basis of her disability." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird v. Rose*, 192 F.3d 462, 467–70 (4th Cir. 1999)). However, contrary to the Magistrate Judge's Report and Recommendation, *Baird* does not stand for the proposition that a plaintiff must show that his exclusion from the benefit at issue was *solely* because of the plaintiff's disability. Rather, *Baird* held that although "a plaintiff seeking relief under . . . the Rehabilitation Act must prove that the defendants' discriminatory conduct was 'solely by reason' of the plaintiff's disability," a plaintiff seeking relief under Title II of the ADA must prove only that his "disability 'played a *motivating role*' in the adverse action." *Constantine*, 411 F.3d at 498 (discussing *Baird*, 192 F.3d at 469–70) (emphasis added). Finally, although the Supreme Court does not appear to have squarely held that an HIV infection is a *per se* disability under the ADA, the Court assumes for the purposes of this motion that plaintiff's HIV/AIDS status meets the disability requirement. *See Bragdon v. Abbott*, 524 U.S. 624, 641–42 (1998) (holding under the facts presented in that case that an asymptomatic, HIV-infected individual met the definition of disability under the ADA).

Based on the above, the plaintiff need not show that his HIV/AIDS status was the "sole" reason for his segregation but rather only that it played a "motivating role." Nevertheless, the Court finds that the facts of this case do not meet even this "more lenient" standard of causation. *See Betts v. Rector & Visitors of Univ. of Va.*, 145 Fed. App'x 7, 10 n.2 (4th Cir. 2005). In particular, and as described in detail above, plaintiff was initially segregated because the judge in plaintiff's underlying criminal case required a mental evaluation before bond could be set. Further, following this mental evaluation, plaintiff remained segregated because ACDC medical staff determined that he suffered from "serious mental issues" and a weakened immune system. Hence, plaintiff's mental and physical health appear to have played motivating roles behind his

segregation, but his status as having HIV/AIDS does not. Indeed, as noted above, plaintiff identified another HIV-positive prisoner who was *not* segregated, and this supports the Court's conclusion that other factors besides plaintiff's status motivated prison staff in this case. Accordingly, the Court agrees with the Magistrate Judge that defendant Brown is entitled to summary judgment on plaintiff's ADA claim.

*Other Claims Not Raised in Plaintiff's Complaint*

The Magistrate Judge notes that the plaintiff's response in opposition to the defendant's motion for summary judgment contains additional allegations that were not raised in plaintiff's original complaint. (*See* ECF No. 60). This Court agrees with the Magistrate Judge that these claims are not properly before the Court, as a party cannot expand its claims to assert new theories in response to a motion for summary judgment. *See, e.g.*, *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007). The Court adopts the Magistrate Judge's recommendation regarding these claims and fully incorporates her discussion thereof into this order.

*Plaintiff's Remaining Objections*

In his objections to the Report and Recommendation, plaintiff again argues that this Court should deny summary judgment because defendant Brown filed her motion prematurely, initially failed to properly serve plaintiff with her motion, and has not properly responded to his discovery requests. However, as the Magistrate Judge notes in her Report, the court has previously addressed all of these issues. (*See* ECF No. 49). Therefore, this Court agrees with the Magistrate Judge that plaintiff's renewed arguments are unavailing.

Plaintiff further objects that because he had to respond to defendant Brown's motion for summary judgment, he was prejudiced in his ability to complete discovery. The Court finds this

7

objection without merit. The Magistrate Judge previously granted a motion to compel filed by plaintiff, and the defendant complied with plaintiff's discovery requests. (*See* ECF Nos. 24, 34, 37, & 38). Plaintiff then made an untimely motion for extension of time to complete discovery, which the Magistrate judge denied because plaintiff neither specified what additional discovery he sought nor showed why he could not have filed the motion earlier. (*See* ECF Nos. 44 & 49). At the same time, the court ordered defendant Brown to re-serve plaintiff with the motion for summary judgment and thereafter granted plaintiff two extensions of time to respond. (*See* ECF Nos. 49, 54, 55, & 57). Based on the above, plaintiff has not shown any prejudice in his ability to obtain discovery.

*Defendant White*

Finally, the Court notes that defendant Michael White, a medical doctor with ACDC, has not been served with process under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 4(m). The Magistrate Judge suggested that defendant White be dismissed without prejudice, and this Court finds the dismissal proper.

CONCLUSION

After a careful review of the record, the applicable law, and the Report and Recommendation, and the objections thereto, the Court finds the Magistrate Judge's recommendation to be proper. Defendant Brown's motion for summary judgment is hereby granted and this action is dismissed with prejudice.

IT IS SO ORDERED.

September 19, 2012  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

8